**13-2963-cv(L)**
*Drimal v. Makol, et al.*

In the

United States Court of Appeals

For the Second Circuit

————

AUGUST TERM, 2014

ARGUED: NOVEMBER 4, 2014
DECIDED: MAY 15, 2015

Nos. 13-2963-cv; 13-2965-cv

ARLENE VILLAMIA DRIMAL,
*Plaintiff-Appellee,*

*v.*

PAULINE TAI,
*Defendant,*

DAVID MAKOL, JAN TRIGG, FRANK LOMONACO, DAVID J. FORD,
EDMUND ROM, KEVIN RIORDAN, ADRIAN BUSBY, BRIAN HARKINS,
JOANN MAGUIRE, MARIA A. FONT, MARTHA M. BERDOTE, THOMAS J.
D'AMICO, MARK MUNSTER, CHRISTOPHER DEGRAFF, S. MENDOZA-
PENAHERRERA,
*Defendants-Appellants.*

————

Appeal from the United States District Court
for the District of Connecticut.
No. 3:12-cv-0717 – Warren W. Eginton, *Judge.*

————

Before: WALKER, LYNCH, and CHIN, *Circuit Judges,*

————

Arlene Villamia Drimal brought this action against sixteen FBI agents alleging that they violated Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2522, when they listened to her private calls with her husband. The calls were intercepted during an authorized wiretap on the telephone of Drimal's husband as part of an investigation into a conspiracy to commit securities fraud. Defendant FBI agents moved to dismiss the suit for failure to state a claim and on qualified immunity grounds. The District Court for the District of Connecticut (Warren W. Eginton, *Judge*) denied their motion, finding the complaint sufficient to state a claim despite its failure to mention minimization. We hold that Drimal's complaint in its present form does not plausibly state a claim because it recites only legal conclusions. We also conclude that in its qualified immunity analysis the district court should have assessed the reasonableness of the agents' minimization efforts as they relate to each defendant. Accordingly, we REVERSE the district court's denial of the motion to dismiss, and REMAND for the

district court to dismiss the complaint without prejudice to

repleading and for further proceedings consistent with this opinion.

————

> JOHN R. WILLIAMS, New Haven, CT, *for Plaintiff-Appellee.*
>
> EDWARD HIMMEL, (Barbara L. Herwig, Catherine H. Dorsey, *on the brief*), *for* Stuart F. Delery, Deputy Assistant Attorney General, and Deirdre M. Daly, United States Attorney, United States Attorney's Office for the District of Connecticut, *for Federal Defendants-Appellants*.
>
> JAMES I. GLASSER, Wiggin & Dana, LLP, New Haven, CT, *for Defendant-Appellant Adrian Busby*.

————

JOHN M. WALKER, JR., *Circuit Judge*:

Arlene Villamia Drimal brought this action against sixteen FBI

agents alleging that they violated Title III of the Omnibus Crime

Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2522 ("Title

III"), when they listened to her private calls with her husband. The

calls were intercepted during an authorized wiretap on the

telephone of Drimal's husband as part of an investigation into a

conspiracy to commit securities fraud. Defendant FBI agents moved

to dismiss the suit for failure to state a claim and on qualified immunity grounds. The District Court for the District of Connecticut (Warren W. Eginton, *Judge*) denied their motion, finding the complaint sufficient to state a claim despite its failure to mention minimization. We hold that Drimal's complaint in its present form does not plausibly state a claim because it recites only legal conclusions. We also conclude that in its qualified immunity analysis the district court should have assessed the reasonableness of the agents' minimization efforts as they relate to each defendant. Accordingly, we REVERSE the district court's denial of the motion to dismiss, and REMAND for the district court to dismiss the complaint without prejudice to repleading and for further proceedings consistent with this opinion.

## BACKGROUND

On May 15, 2012, Drimal filed a civil complaint against sixteen FBI agents who had administered an authorized wiretap of her husband's cellular telephone, alleging that they violated Title III by

listening to her private conversations with her husband.[1] Although the complaint does not refer to minimization, under Section 2518(5) of Title III, it is a violation to fail to "minimize the interception of communications not otherwise subject to interception." Section 2520 gives "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter" the right to "recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate," including damages. 18 U.S.C. § 2520(a).

I.     **Mr. Drimal's Criminal Case**

Drimal's complaint arises out of an earlier criminal prosecution in the Southern District of New York that was ultimately tried before Judge Richard J. Sullivan. *See United States v. Goffer*, 756 F. Supp. 2d 588 (S.D.N.Y. 2011), *aff'd*, 721 F.3d 113 (2d Cir. 2013). The trial was preceded by a wide-ranging federal securities fraud investigation that included a wiretap of her husband's cellular

---

[1] Drimal also alleges that the defendants violated Section 52-570d of the Connecticut General Statutes. Like the district court, we focus on her Title III claim.

phone during which FBI agents intercepted and monitored his calls with Drimal.

A court order authorizing the wiretap of Mr. Drimal's cellular telephone for two thirty-day periods in late 2007 and early 2008, *id.* at 590, specified that "[m]onitoring of conversations must immediately terminate when it is determined that the conversation is unrelated to communications subject to interception . . . . If a conversation is minimized, monitoring agents shall spot check to ensure that the conversation has not turned to criminal matters." *Id.*

The Assistant United States Attorney who supervised the wiretap also issued written instructions on the minimization requirement. He instructed agents to "listen to the beginning of each communication only so long as is necessary to determine the nature of the communication and, in any case, no longer than a few minutes unless the communication is 'pertinent.'" *Id.* In addition, he advised that "[i]f, after several days or weeks of interception" it became apparent that conversations between Mr. Drimal and another party involved "invariably innocent, non-crime related matters," then

communications between those parties "should not be recorded, listened to, or even spot monitored." *Id.* Finally, the agents were told to "discontinue monitoring if you discover that you are intercepting a personal communication solely between husband and wife" unless the conversations included a third party or addressed "ongoing as opposed to past violations of law." *Id.* at 591. During the wiretap, agents monitored over one thousand of Mr. Drimal's telephone conversations, including approximately 180 calls with Mrs. Drimal that were not pertinent to the investigation. *Id.* at 591, 595.

In 2010, Mr. Drimal moved before Judge Sullivan to suppress the entire wiretap on the basis that the government had failed to properly minimize calls with his wife. *Id.* at 589, 591. At the hearing, several agents testified, including defendant Special Agent Lomonaco who admitted that he had listened to a privileged conversation which he had "no right" to hear and defendant Special Agent Ford who remembered "kicking [him]self" for listening to a privileged marital conversation. J.A. 49.

The district court denied the motion to suppress all of the

7

wiretapped phone calls. Focusing on eighteen calls it identified as "potentially violative," the district court stated that the monitoring of three of these calls had been "particularly egregious," 756 F. Supp. 2d at 594, and that another five calls "raise[d] questions about the sufficiency of the agents' minimization efforts," *id.* at 595. The district court concluded, however, that "on the whole, the wiretap was professionally conducted and generally well-executed," *id.* at 597, even as it described certain failures to minimize private calls between husband and wife as "inexcusable and disturbing," *id.* at 598. The district court observed that the "most egregious failures occurred in the early stages of the wiretap," when agents might still be learning to identify Drimal's voice, and that agents minimized the calls satisfactorily later in the wiretap.[2] *Id.* at 596.

## II.    Mrs. Drimal's Civil Lawsuit

Following the conclusion of her husband's criminal case, Drimal filed this action in the District of Connecticut against sixteen

---

[2] At some unspecified point later in the wiretap, agents were apprised of Drimal's telephone number, which was posted at the monitoring station.

FBI agents who monitored or supervised the monitoring of the wiretap, seeking compensatory and punitive damages against the agents in their personal capacities. The district court denied the defendants' motion to dismiss for failure to state a claim and on qualified immunity grounds.

Defendants now appeal from the denial of qualified immunity.

## DISCUSSION

We review *de novo* the denial of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 225 (2d Cir. 2014); *see also Garcia v. Does*, 779 F.3d 84, 91 (2d Cir. 2015). Although a district court's denial of a motion to dismiss is not a final judgment, we review it here because the defendants' qualified immunity claim occasions an interlocutory appeal. *See Ashcroft v. Iqbal*, 556 U.S. 662, 671-72 (2009) (stating that decision denying qualified immunity can be appealable order); *see also Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (holding that "a district

court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment").

The district court's rulings on the pleadings and on qualified immunity suffer from two deficiencies. First, the district court erred in finding Drimal's complaint sufficient to plead a violation of Title III because Drimal simply asserted in a conclusory fashion that intercepting marital telephone calls violated Title III without any reference to the duty to minimize. Second, in evaluating defendants' claims of qualified immunity, the district court ruled on all the defendants as a single group instead of evaluating Drimal's claims against each defendant individually.

Accordingly, we vacate the district court's denial of the motion to dismiss and direct the dismissal of the complaint with leave to replead under Federal Rule of Civil Procedure 15(a)(2) because it appears that amending the complaint would not be futile. *Cf. Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617,

622 (2d Cir. 2009) (summary order) (remanding where "granting leave to amend anew may not be futile in this case").

## I.  The Plausibility of Drimal's Complaint

To survive a 12(b)(6) motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotation marks omitted). While this standard "does not require detailed factual allegations . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted).

Drimal's complaint fails to plausibly allege a violation of law because she recites only legal conclusions. Conspicuously absent from the complaint is the concept of minimization. Drimal simply alleges that each defendant "unlawfully intercepted and listened to privileged, confidential marital communications," identifying the allegedly unlawfully monitored calls only by date.  J.A. 50. These

11

allegations lack specificity. As drafted, they give no indication of the circumstances that support the conclusory allegation of unlawfulness.

Although 18 U.S.C. § 2517(4) specifies that "[n]o otherwise privileged wire, oral, or electronic communication intercepted in accordance with, or in violation of, the provisions of this chapter shall lose its privileged character," nothing in Title III prohibits outright the interception or monitoring of privileged conversations. To be sure, § 2518(5) requires that such calls be "minimized" but that requirement cannot be gleaned from the complaint.

The court order that authorized this wiretap included specific instructions governing how conversations between husband and wife should be treated.[3] These instructions provided:

> You are to discontinue monitoring if you discover that you are intercepting a personal communication solely between husband and wife. If it appears that a third person is present during this communication, however,

---

[3] We take judicial notice of the court order, which is discussed in *Goffer*, 756 F. Supp. 2d at 590-91, because Drimal's complaint cites frequently to *Goffer*. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered.").

the communication is not privileged. So too, if the communication deals not with private matters between husband and wife, but instead with ongoing as opposed to past violations of law, it is not a privileged conversation.

*Goffer*, 756 F. Supp. 2d at 591. These instructions do not prohibit the interception and monitoring of marital calls, but they do require their minimization. This is entirely logical: agents obviously must intercept and listen to a call before they can determine whether a conversation is privileged and subject to minimization and, if so, to what degree. Accordingly, to survive a motion to dismiss, Drimal's complaint must include facts alleging how each defendant failed to comply with his or her duty to minimize specified telephone calls as required by § 2518(5) and the authorization order.

In assessing the complaint, the district court read the minimization requirement into the plaintiff's allegations that defendants "unlawfully" listened to her calls and required no greater specificity as to the facts alleged. However, a simple allegation that defendants behaved "unlawfully," unsupported by any factual detail, is precisely the type of legal conclusion that a

court is not bound to accept as true on a motion to dismiss, and the district court erred in doing so here.

## II.     The Defendants' Claim of Qualified Immunity

In the event that plaintiff files an amended complaint following remand that rectifies the deficiencies we have outlined, the district court must focus more closely on the claims of qualified immunity as they relate to each defendant. We think it useful here to suggest some guidance in this regard.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). To lose immunity, an official must violate a right, the contours of which are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage [of the] litigation." *Wood v. Moss*, 134 S. Ct. 2056, 2065 n.4 (2014) (internal quotation marks omitted). "Because qualified immunity is an immunity from suit rather than a mere defense to liability[,] it is effectively lost if a case is erroneously permitted to go to trial." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and ellipsis omitted). While issues related to qualified immunity frequently must await a motion for summary judgment, that might not be the case here. A putative amended complaint, pleaded with the requisite specificity based on the hearing before Judge Sullivan, likely would enable the district court to address qualified immunity issues, at least in part, at the pleading stage.

Section 2518(5) of Title III does not precisely define the minimization requirement. It states only that agents must "minimize the interception of communications not otherwise subject to interception." 18 U.S.C. § 2518(5). In *Scott v. United States*, the Supreme Court articulated an "objective reasonableness" test to

15

determine whether agents have properly minimized calls. 436 U.S. 128, 138 (1978). This standard requires "an objective assessment of an officer's actions in light of the facts and circumstances then known to him." *Id.* at 137.

The district court must thus evaluate each agent's minimization efforts under such an "objective reasonableness" standard based on the facts of this case to determine whether each defendant "would understand that what he is doing violates" Title III's minimization requirement. *Anderson*, 483 U.S. at 640.

The government argues on behalf of all but one defendant[4] that a per se "two-minute rule" derived from *United States v. Bynum*—treating calls monitored for less than two minutes as properly minimized—entitles agents to immunity for interceptions that did not exceed that duration. 485 F.2d 490 (2d Cir. 1973), *vacated and remanded on other grounds*, 417 U.S. 903 (1974). In *Bynum*, we held that a wiretap that monitored 2,058 calls in a vast narcotics conspiracy case did not violate Title III's minimization requirement.

---

[4] The appellate staff of the Department of Justice's Civil Division submitted the brief for all defendants except Special Agent Adrian Busby.

16

*Id.* at 500-02. We excluded calls under two minutes from our evaluation of the wiretap, noting that "in a case of such wide-ranging criminal activity as this, it would be too brief a period for an eavesdropper even with experience to identify the caller and characterize the conversation as merely social or possibly tainted." *Id.* at 500.

While our reasoning in *Bynum*, which didn't pertain to any privileged communications, can be read to suggest a presumption that calls less than two minutes long need not be minimized, this is not a fixed rule for every case: whether the two-minute presumption applies is a fact-specific determination.

This case does not present the same circumstances as *Bynum*. Many of the violations here took place in the early stages of the wiretap when defendants were less familiar with the case and with Mrs. Drimal's lack of involvement in it, but the agents should have realized reasonably early in the wiretap that these husband and wife conversations were not relevant to the investigation. As Judge Sullivan noted in *Goffer*, Mr. and Mrs. Drimal occasionally discussed

17

"deeply personal and intimate" issues, 756 F. Supp. 2d at 594, and "in each of these calls it should have been apparent within seconds that the conversation was privileged and non-pertinent," *id.* at 595. As a result, the reasoning from *Bynum* that it would be too difficult to minimize calls under two minutes is not applicable here where agents could determine in seconds that the calls between husband and wife were entirely personal in nature. The two-minute presumption we applied in *Bynum* thus does not automatically shield defendants against the failures to minimize calls under two minutes that the putative amended complaint is likely to allege.

Should Drimal file an amended complaint, in assessing the defendants' claim of qualified immunity on remand, the district court must consider the actions of each individual defendant. *Cf. Gill v. Monroe Cnty. Dep't of Soc. Servs.*, 547 F.2d 31, 32 (2d Cir. 1976) (remanding for district court to consider "each plaintiff, each cause of action and each defendant"). Government Exhibit 30, featured at the suppression hearing in the criminal case and of which we take

18

judicial notice,[5] makes it apparent that different defendants responded differently to their duty to minimize: some may be able to successfully claim qualified immunity even at the pleading stage where others may not.[6]

## CONCLUSION

For the reasons stated above, we **REVERSE** the district court's denial of defendants' motions to dismiss, and **REMAND** for the district court to dismiss the complaint without prejudice to repleading and for further proceedings consistent with this opinion.

---

[5] *See supra* Note 2.

[6] Without addressing the merits of a qualified immunity claim by any particular defendant, it is worth noting that the conduct of the agents in question covers a broad range. Three named defendants, two of whom gave testimony that could be read as acknowledging that they listened to conversations they knew they should not have, accounted for the eight conversations whose recording most troubled Judge Sullivan. At the other extreme, it is difficult to review Government Exhibit 30 without concluding that at least some of the named defendants seem to have been quite exemplary in their minimization practices. Other factors, such as the stage of the wiretap at which the calls were intercepted and the nature and timing of minimization supervision, may well be relevant to the qualified immunity analysis.